IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Coronavirus Reporter, <br><br> Plaintiff, <br><br> v. <br><br> Apple Inc., <br><br> Defendant. | § <br> § <br> § <br> § <br> §    Civil Action No. 1:21-cv-00047-LM <br> § <br> § <br> § |

**DECLARATION OF MARK ROLLINS IN SUPPORT OF
APPLE INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

I, Mark Rollins, declare as follows:

1. I am over 18 years of age and competent to make this declaration. I am employed as a Finance Manager at Apple Inc. ("Apple"), and my primary place of work is Sunnyvale, California. I have been employed by Apple since 2019.

2. I provide this declaration in support of Apple's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California ("Northern District") in the above-captioned case. Unless otherwise indicated below, the statements made in this declaration are based on my personal knowledge, my review of corporate records maintained by Apple in the ordinary course of its business, and/or my discussions with Apple employees. If called to testify as a witness in this matter, I could and would testify competently and truthfully to each of the statements in this declaration under oath.

3. Apple is a California corporation and was founded in 1976. Apple is a global business headquartered in Cupertino, California, which is in the Northern District. I understand that the Northern District includes the following counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, San Francisco, San Mateo,

Santa Clara, Santa Cruz, and Sonoma. Apple's management and primary research and development facilities are located in or near Cupertino, including surrounding cities such as Sunnyvale, all of which are located in the Northern District. The primary operation, marketing, sales, and finance decisions for Apple also occur in or near Cupertino. As of March 2021, Apple has more than 35,000 employees who work in or near its Cupertino headquarters.

4. I understand that Coronavirus Reporter ("Plaintiff") filed the above-captioned lawsuit against Apple in the United States District Court for the District of New Hampshire ("DNH"). I have reviewed the Complaint filed by Plaintiff on January 19, 2021 and the Amended Complaint filed on March 4, 2021. I understand that Plaintiff alleges that Apple violated Sections 1 and 2 of the Sherman Act, breached the Apple Developer Agreement ("Developer Agreement"), and breached the implied covenant of good faith and fair dealing by allegedly declining to approve Plaintiff's proposed iOS application ("app"), named "Coronavirus Reporter," for distribution through Apple's iOS App Store (the "App Store"). *See, e.g.*, Amend. Compl. ¶¶ 81, 84, 90, 93, 95, 110, 116. I also understand Plaintiff alleges that the Developer Agreement and the App Store Review Guidelines "unreasonably restrain competition." Amend. Compl. ¶ 91.

5. A third-party developer who wishes to distribute apps on Apple's App Store, such as Plaintiff, must agree to the Developer Agreement and the Apple Developer Program License Agreement ("License Agreement"). Developers review each agreement through an online portal within their developer account and execute the agreements by clicking a button within the portal indicating that they agree to the terms of both agreements. Apple instructs developers to read each agreement before executing it.

6. Calid Inc. is the developer for the Coronavirus Reporter app.

7.     Attached to this declaration is a true and correct copy of the Developer Agreement (Exhibit A) to which Calid Inc. agreed by April 24, 2017.

8.     Attached to this declaration is a true and correct copy of the License Agreement (Exhibit B) to which Calid Inc. agreed on December 29, 2019.  Attached to this declaration is a true and correct copy of the License Agreement (Exhibit C) to which Calid Inc. agreed on July 30, 2020.

9.     The App Store Review Guidelines provide the rules and requirements relating to Apple's review of apps for possible publication on the App Store.  A true and correct copy of the current App Store Review Guidelines is attached to this Declaration as Exhibit D.

10.    On March 14, 2020, Apple published a news release through its developer portal titled, "Ensuring the Credibility of Health & Safety Information."  The news release announced Apple's policy governing the review of apps related to COVID-19.  A true and correct copy of the "Ensuring the Credibility of Health & Safety Information" news release is attached to this Declaration as Exhibit E.

11.    As further set forth below, Apple employees responsible for setting the policy governing review of proposed iOS applications—including policies regarding apps related to the coronavirus, COVID-19, or the pandemic—are based in the Northern District.  None of those employees is based in New Hampshire.  Employees responsible for reviewing iOS apps, communicating the rejection of such apps, and handling appeals from such rejection, (generally, "App Review") also work primarily in the Northern District.  I understand that working and electronic files related to the alleged rejection of Plaintiff's Coronavirus Reporter app were generated in the Northern District, and none were generated in the DNH.  These documents reside primarily on local computers located in California or on servers accessible in California

only by Apple employees.

12.    The head of the App Review team, which is responsible for reviewing apps submitted for inclusion in the App Store for conformity with the App Store Review Guidelines, works and resides within the Northern District.  The App Review team comprises approximately 500 people.  The head of the App Review team confirmed that Apple employees engaged in reviewing proposed iOS apps primarily live and work within the Northern District. Furthermore, all Apple employees involved in the review of Plaintiff's proposed iOS app, Coronavirus Reporter, live and work in the Northern District.  To the best of his knowledge, neither the head of the App Review team nor any member of his team (1) has ever lived in New Hampshire while working on App Review matters, (2) is currently located in New Hampshire, or (3) works with any individuals located in New Hampshire on App Review matters.  The head of the App Review team has never traveled to New Hampshire in connection with his work on App Review matters.

13.    All members of the Executive Review Board ("ERB"), which is responsible for setting App Store policies and guidelines, are based within the Northern District.  All ERB members have knowledge of Apple's efforts during the pandemic to ensure that consumers had access to reputable sources of information.

14.    I am knowledgeable about Apple's sales and financial information concerning Apple's products and services related to Plaintiff's allegations.  My primary workplace is in the Northern District.  The primary place of work for employees on my team is in the Northern District.  Documents concerning sales and financial information for these products and services reside on local computers and/or servers either located in or around the Northern District or accessible in the Northern District.  Neither I nor any employee on my team is located in New

Hampshire. I have never traveled to New Hampshire in connection with my work on this team. None of my team members works with any individuals located in New Hampshire with respect to financials relevant to the Apple products and services in this matter.

15. As of the date of this declaration, Apple operates 270 retail stores in the United States, more than 50 of which are in California, including 19 stores in the Northern District. Apple has three retail stores in the DNH. I am not aware of any retail employee in these retail stores who was ever involved in the review of Plaintiff's Coronavirus Reporter iOS app, App Review more broadly, or in setting App Review policy. To the extent that any of Apple's relevant products are sold in the DNH, they are and were sold nationwide, and are not offered in any manner or degree differently than they are offered elsewhere. Aside from its three retail stores in New Hampshire, Apple does not otherwise maintain any facilities or corporate offices in the DNH.

16. I declare under penalty of perjury that the foregoing is true and correct. Executed on March 10, 2021, in Santa Clara, California.

_____
Mark Rollins