UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Coronavirus Reporter

    v.                                      Civil No. 21-cv-047-LM
                                           Opinion No. 2021 DNH 080 P

Apple, Inc.

**O R D E R**

Plaintiff Coronavirus Reporter brings this antitrust action against defendant Apple, Inc. ("Apple"), alleging that Apple refused, without a "valid reason," to permit plaintiff to publish a mobile device application through Apple's iOS App Store (the "App Store"). Plaintiff alleges that it developed its application to create a platform where users could voluntarily self-report potential symptoms of COVID-19 infection. Plaintiff filed a first amended complaint asserting Apple's liability under Section 1 and Section 2 of the Sherman Act[1] and under New Hampshire common law for breach of contract and breach of the implied covenant of good faith and fair dealing.

Plaintiff concedes that, before it submitted its application to Apple for distribution through the App Store, it agreed to be bound by the Apple Developer Program License Agreement (the "License Agreement"). See doc. no. 27, ¶¶ 219-220. The License Agreement contains a forum selection clause providing that any

---

[1] Section 1 of the Sherman Act prohibits contracts in restraint of trade. Section 2 prohibits monopolies over any part of interstate trade or commerce.

litigation between the parties arising either out of the License Agreement or out of the parties' relationship will take place in the Northern District of California.

Before the court is Apple's motion (doc. no. 19) to transfer venue to the Northern District of California. Apple's motion is primarily based on the License Agreement's forum selection clause. In the alternative, Apple argues that, even if the forum selection clause were unenforceable or inapplicable, the court should nevertheless transfer this action to the Northern District of California in the interests of justice and to promote the convenience of the parties and witnesses. Plaintiff objects (doc. no. 22).

For the reasons that follow, the court grants the motion to transfer.

**LEGAL STANDARD**

Before the court determines the merits of a 28 U.S.C. § 1404(a) motion to transfer venue pursuant to a contractual forum selection, it must first determine, as a preliminary matter, whether (1) the parties entered into an enforceable contract containing a forum selection clause, (2) the clause is mandatory, and (3) the clause governs the claims in the lawsuit. See PSI Water Sys., Inc. v. Robuschi USA, Inc., No. 14-CV-391-LM, 2015 WL 3752447, at *4 (D.N.H. June 16, 2015) (quoting Expedition Leather LLC v. FC Org. Prods. LLC, No. 11-cv-588-JL, 2013 WL 160373, at *1 (D.N.H. Jan. 15, 2013)); see also Caribbean Rests., LLC v. Burger King Corp., 23 F. Supp. 3d 70, 76 (D.P.R. 2014). The moving party bears the burden to establish these preliminary matters by a preponderance of the evidence. See

Expedition Leather, 2013 WL 160373 at *1.  If the moving party establishes that the non-moving party is bound by a mandatory forum selection clause, the court will proceed to consider the merits of the motion to transfer.

Where a party moves to transfer venue under Section 1404(a) on grounds other than a mandatory forum selection clause, the moving party bears the burden to establish that various private-interest and public-interest factors collectively outweigh the deference due to the plaintiff's choice of forum, such that transfer would serve "the convenience of parties and witnesses" and promote "the interest of justice."  28 U.S.C. §1404(a); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981).  However, where—as here—the moving party seeks transfer pursuant to a mandatory forum selection clause, the analysis changes significantly.  See Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49, 62, 64, 66, (2013).  Where a Section 1404(a) motion is filed to enforce a mandatory forum selection clause, the plaintiff's choice of forum is afforded no weight, the private-interest factors are deemed to weigh "entirely in favor" of transfer, and it is the opposing party's burden to establish that the public-interest factors "overwhelmingly disfavor a transfer."  Atl. Marine, 571 U.S. at 62, 64, 66 (2013).

## FACTUAL BACKGROUND

The following facts are drawn from plaintiff's allegations (doc. nos. 1, 17, 27), the Declaration of Mark Rollins (doc. no. 19-2), the License Agreement (doc. nos. 19-4, 19-5), the Apple Developer Agreement ("Developer Agreement") (doc. no. 19-3),

and the App Store Review Guidelines (the "Guidelines") (doc. no. 19-6).  The court takes judicial notice of further relevant facts as stated below.

Apple operates the App Store as a platform for developers of mobile device applications ("apps") to distribute apps to users of mobile devices running Apple's proprietary iOS operating system.  Apple requires that any person who wishes to distribute an app through the App Store agree to the terms of both the License Agreement and the Developer Agreement and to abide by the Guidelines.  The License Agreement governs developers' access to the App Store and license to use certain of Apple's proprietary software and services for the purpose of developing and testing apps.  The Developer Agreement governs developers' relationship with Apple.  The Guidelines set forth the standards Apple applies when reviewing apps to determine whether it will accept them for distribution through the App Store.

Developers indicate their agreement to the License Agreement and Developer Agreement by clicking a button on a web page.  In bolded and capitalized text, the web page instructs developers to read each agreement before agreeing to be bound by its terms.  Each agreement also clearly states in bolded and capitalized text that it constitutes a "legal agreement between [the developer] and Apple."

The License Agreement contains a forum-selection clause providing that:

> Any litigation or other dispute resolution between [the app developer executing the License Agreement] and Apple arising out of or relating to this [License] Agreement, the Apple Software, or [the app developer's] relationship with Apple will take place in the Northern District of California, and [the app developer] and Apple consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District with respect any such litigation or dispute resolution.

4

Doc. no. 19-4, ¶ 14.10.  The License Agreement additionally specifies that it "will be governed by and construed in accordance with the laws of the United States and the State of California."  Id.

Plaintiff alleges that it completed development of its app in March 2020, and promptly submitted it to Apple for possible distribution through the App Store.  See doc. no. 27, ¶¶ 6, 8.  Shortly thereafter, Apple published a news release announcing that it would accept apps relating to COVID-19 for distribution through its App Store only if they were submitted by "recognized entities such as government organizations, health focused NGOs, companies deeply credentialed in health issues, and medical or educational institutions."  Doc. no. 19-2 (Rollins Declaration), ¶ 10.  Plaintiff alleges that Apple ultimately rejected the app on two stated grounds: (1) it was not submitted by a "compan[y] deeply credentialed in health issues," and (2) its "user-generated data has not been vetted for accuracy by a reputable source."  Doc. no. 27, ¶ 10.  Plaintiff alleges that approximately one month thereafter Apple nevertheless approved App Store distribution of a substantially similar app developed by a London teaching hospital.  See id., ¶ 11.

Apple offers evidence that the "Coronavirus Reporter" app was developed, not by plaintiff, but rather by "Calid Inc."  Doc. no. 19-2 (Rollins Declaration), ¶ 6.  In both its complaint as originally filed and its first amended complaint, plaintiff alleged that it "previously transacted business under the name Calid."  Doc. no. 1, ¶ 14; doc. no. 17, ¶ 14.  Plaintiff did not include any such allegation in the document it

5

filed as its purported second amended complaint.² See doc. no. 26, ¶¶ 14 et passim. Other than its allegations that it was plaintiff which developed and owns rights to the "Coronavirus Reporter" app, id., ¶¶ 6, 14, plaintiff offers no evidence, argument, or assertion regarding the entity that developed the app.

According to Apple's evidence, Calid Inc. ("Calid") agreed to be bound by the terms of the License Agreement and Developer Agreement. See doc. nos. 19-3 (Developer Agreement signed by Calid April 24, 2017), 19-4 (License Agreement signed by Calid on December 29, 2019), 19-5 (amended License Agreement signed by Calid on July 30, 2020). Plaintiff concedes that it executed both the License Agreement and Developer Agreement but does not specify whether it did so under its own name, under the name of some other entity, or through operation of law or by assignment from another entity. See doc. no. 27, ¶¶ 12, 14, 87, 219-220, 232, 234, 252, 261.

Plaintiff alleges that it is a "Wyoming Corporation with officers based in New Hampshire, Vermont, and Upstate NY," and that it shares its corporate name, "Coronavirus Reporter," with the app at issue in this case. Doc. no. 27, ¶ 14.

---

² Plaintiff filed the document styled as its second amended complaint (doc. no. 27) on April 26, 2021. Because plaintiff did not first request or receive either leave of court or Apple's consent before doing so, as is required under Federal Rule of Civil Procedure 15(a), the filing was not effective to amend plaintiff's complaint. Accordingly, the court construes the first amended complaint (doc. no. 17) as plaintiff's operative pleading. However, because the document styled as the second amended complaint contains plaintiff's most fully developed account of the facts underlying its claims, the court considers its allegations in stating the factual background.

Pursuant to Federal Rule of Evidence 201, the court takes judicial notice that the Wyoming Secretary of State incorporated an entity named "Coronavirus Reporter Corporation" effective January 21, 2021[3] (two days after plaintiff initiated this proceeding). That entity is a Wyoming corporation headquartered in Wyoming. The court takes further judicial notice that the Wyoming Secretary of State incorporated an entity named "Calid Inc." effective January 19, 2017.[4] Calid is a Wyoming Corporation that was headquartered in Wyoming until February 2, 2021, when it changed its principal office from Cheyenne, WY, to Manchester, NH. Both Coronavirus Reporter Corporation and Calid are active corporte entities currently in good standing with the Wyoming Secretary of State.[5]

---

[3] See Wyoming Secretary of State business records search (April 29, 2021), https://wyobiz.wyo.gov/Business/FilingDetails.aspx?eFNum=178042217173052067138013177138232107099067148075.

[4] See Wyoming Secretary of State business records search (April 29, 2021), https://wyobiz.wyo.gov/Business/FilingDetails.aspx?eFNum=244127058131055075043162122187017148039060162085.

[5] For the foregoing reasons, it is unclear as a factual matter whether it was plaintiff or Calid that developed the app and submitted it to Apple as a candidate for distribution through the App Store. Further complicating the issue, the License Agreement contains a provision prohibiting assignment of a developer's rights and obligations under the agreement absent Apple's advance written consent. See Doc. no. 19-4. ¶ 14.3. There is therefore an open question as to whether plaintiff is the real party in interest with standing to bring this action. This question will require resolution prior to determination of the merits of plaintiff's claims. However, for purposes of resolving the motion to transfer, the court assumes the truth of plaintiff's allegations that it developed and submitted the app, was harmed by the complained-of conduct, and has standing to bring its claims (see doc. no. 27, ¶¶ 1, 6, 8, 10, 14, 24, 46, 47).

7

In the motion before the court, Apple seeks to enforce the License Agreement's forum selection clause through transfer to the Northern District of California.

**DISCUSSION**

I.   The Forum Selection Clause

As the moving party, Apple must establish that (1) plaintiff entered a valid contract containing an enforceable forum selection clause, (2) the clause is mandatory, and (3) the clause governs plaintiff's claims in this action.  See PSI Water, 2015 WL 3752447, at *4.  The court examines each prong of the test below.

   A.   Plaintiff Agreed to be Bound by a Valid Contract Containing an Enforceable Forum Selection Clause

There is no dispute that plaintiff entered a valid contract containing a forum selection clause.  Although plaintiff argues that the forum selection clause contained in the License Agreement is unenforceable, plaintiff does not deny that it agreed to be bound by the License Agreement[6] and does not dispute that the License Agreement is otherwise a valid contract.  See, e.g., doc. no. 22, ¶ 12.

Plaintiff does, however, argue that the forum selection clause is unenforceable.  A forum selection clause is considered unenforceable if:  (1) it was

---

[6] Moreover, as noted, the record contains undisputed evidence that Calid executed the License Agreement, see doc. no. 19-2, ¶ 6, and plaintiff alleges that it "previously transacted business" as Calid, doc. no. 17, ¶ 14.

8

"the product of 'fraud or overreaching;'" (2) its "'enforcement would be unreasonable and unjust,'" (3) proceedings in the contractually selected forum would be "so gravely difficult and inconvenient" as to effectively deprive the plaintiff of its right to be heard by a court, or (4) "'enforcement would contravene a strong public policy of the forum in which suit is brought.'" Huffington v. T.C. Grp., Inc., 637 F.3d 18, 23 (1st Cir. 2011) (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 18 (1972)).  Plaintiff here offers two arguments: 1) because plaintiff has alleged that Apple engaged in anti-competitive behavior, the court should presume that the forum selection clause was the product of fraud or overreaching; and (2) enforcement of the clause would be unjust because Apple is important to the local economy in the Northern District of California, such that juries selected from within that District might be reluctant to issue a verdict against it.

Plaintiff cites no cases in support of the proposition that allegations of conduct in violation of the Sherman Act constitute sufficient ground, without more, for deeming a forum selection clause unenforceable.  Courts to have considered the question have squarely rejected that theory.  See, e.g., TradeComet.com LLC v. Google, Inc., 435 F. App'x 31, 37 (2d Cir. 2011); Bense v. Interstate Battery Sys., Inc., 683 F.2d 718, 720-722 (2d Cir. 1982).  Moreover, to establish that a forum selection clause should be set aside on grounds of fraud or overreaching, a plaintiff must make a "focused showing . . . that 'the <u>inclusion of that clause in the [parties'] contract</u> was the product of fraud or coercion.'" Huffington, 637 F.3d at 24 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974) (original emphasis

restored)). Plaintiff makes no effort to show that Apple employed fraud or coercion in connection with including the forum selection clause in the License Agreement.

As to plaintiff's suggestion that it would be difficult to find Northern District of California jurors who were not employed in the technology industry (and therefore potentially biased in Apple's favor), plaintiff again offers no supporting evidence or case law. Plaintiff's speculation falls well short of meeting its "heavy burden" to make a "strong showing" that the forum selection clause should be set aside on grounds of unreasonableness or injustice. See Huffington, 637 F.3d at 23-24.

For these reasons, the court finds that Apple has met its burden to show that plaintiff entered a valid contract containing an enforceable forum selection clause.

### B. The Forum Selection Clause is Mandatory

It is unclear whether plaintiff intends to challenge the second prong of the test (whether the forum selection clause is mandatory). In any event, the clause speaks for itself, and its plain language establishes that it is mandatory rather than permissive. The clause provides that any litigation between Apple and the app developer "arising out of or relating to" either the License Agreement or the developer's relationship with Apple "<u>will</u> take place in the Northern District of California." Doc. no. 19-4. ¶ 14.10 (emphasis supplied). A forum selection clause is "plainly mandatory" where it contains language—including the verb "will"—clearly indicating that jurisdiction and venue will lie exclusively in the selected forum.

Autoridad de Energía Eléctrica v. Vitol S.A., 859 F.3d 140, 146 (1st Cir. 2017); see also Claudio-de León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014); Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 17, 19 (1st Cir. 2009); Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 13 (1st Cir. 2001) (stating that "when parties agree that they 'will submit' their dispute to a specified forum, they do so to the exclusion of all other forums").  In short, the forum selection clause at issue here is mandatory.

      C.      <u>Plaintiff's Claims are Within the Scope of the Forum Selection Clause</u>

The crux of the parties' dispute is over the third prong (whether the clause governs plaintiff's claims).  Plaintiff argues that this is predominately an antitrust action raising statutory claims necessarily falling outside the scope of the contractual forum selection provision.  The court disagrees.

Plaintiff's claims plainly "aris[e] out of or relat[e] to" plaintiff's relationship with Apple.  In Huffington, the First Circuit considered whether statutory claims were within the scope of a forum selection clause specifying the Delaware courts as the exclusive forum for lawsuits "with respect to" a specified contract.  After finding that the phrase "with respect to" was "synonymous" with "relating to" (the phrase used in the forum selection clause at issue here), the court held that such phrases should be interpreted "broad[ly]" to mean "simply 'connected by reason of an established or discoverable relation.'"  Huffington, 637 F.3d at 22 (citation omitted).  Because the alleged statutory violations at issue could not have occurred absent the

11

relationship created by the parties' contract, the Huffington court held that the plaintiff's statutory claims necessarily fell within the scope of the parties' contractual forum selection. See id. at 22-23; see also id. at 22 ("a suit is 'with respect to' [an] agreement if the suit is related to that agreement—at least if the relationship seems pertinent in the particular context"); Autoridad, 859 F.3d at 146 ("statutory claims . . . plainly relate" to an agreement where the complained-of conduct underlying the claims would not have occurred but for the agreement); Bense, 683 F.2d at 720-722 (affirming dismissal of Sherman Act claims for improper venue based on a forum selection clause vesting "exclusive venue" for litigation "arising directly or indirectly from" a specified agreement).

    Here, the forum selection clause at issue is even broader than that at issue in Huffington because its scope extends not merely to claims relating to the License Agreement but also to claims relating to the "relationship" between plaintiff and Apple. Because it is undisputed that plaintiff's agreement to be bound by the License Agreement was a prerequisite to Apple's consideration of plaintiff's app for distribution through the App Store, the conduct underlying plaintiff's claims would not have occurred but for the License Agreement and the relationship it created. Under the reasoning of Huffington and Autoridad, it follows that plaintiff's claims are within the scope of the forum selection clause.[7]

---

[7] Moreover, the court notes that plaintiff's claims for violation of Section 1 of the Sherman Act are premised at least in part on the theory that the License Agreement itself constitutes an unreasonable restraint on competition. See doc. no. 27, ¶ 219-220.

12

D. <u>Plaintiff is Bound by the License Agreement's Forum Selection Clause</u>

Apple has met its burden at all three prongs of the test.  See PSI Water, 2015 WL 3752447, at *4.  The court now proceeds to consider whether Apple is entitled to the requested transfer under Section 1404(a).

II. <u>Transfer Pursuant to 28 U.S.C. § 1404(a)</u>

Where a valid and mandatory forum selection clause points to another federal district court, 28 U.S.C. § 1404(a) provides an appropriate procedural mechanism for its enforcement.  See Atl. Marine, 571 U.S. at 59.  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  And the Supreme Court has explained that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"  Atl. Marine, 571 U.S. at 59-60 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)); see also Rivera, 575 F.3d at 18.

To persuade the court that transfer to the Northern District of California is not warranted, plaintiff bears "the burden of showing that public-interest factors overwhelmingly disfavor a transfer."  Atl. Marine, 571 U.S. at 66.  Public-interest factors bearing on the merits of a Section 1404(a) motion to transfer venue include:

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981) (citations omitted).

Plaintiff offers six enumerated arguments in seeking to meet its burden under Atlantic Marine: (1) much of the discovery to be exchanged in this case will be electronic, and therefore likely to entail the same costs wherever the parties litigate, (2) plaintiff's counsel is willing to travel to California to depose witnesses there, (3) litigating in California would decrease Apple's costs but increase plaintiff's by an estimated $200,000, (4) litigation in California is prohibitively expensive, (5) Apple's App Store policies impact New Hampshire consumers, and (6) there is no compelling ground to conclude that considerations of judicial economy favor transfer.

Plaintiff's arguments fall well short of meeting its burden. The first four arguments all address private-interest rather than public-interest factors. The court is obliged under Atlantic Marine to construe the private-interest factors as favoring transfer and so disregards those arguments. And plaintiff's fifth and sixth arguments fail to address the question whether any public-interest factor affirmatively disfavors transfer. At most those arguments constitute vague challenges to the weight of the evidence that public-interest factors favor transfer.

None of plaintiff's arguments lends support to plaintiff's position that the public-interest factors militate "overwhelmingly" against transfer. The court accordingly declines to disturb the "controlling weight" ordinarily afforded the parties' contractual choice of forum. Atl. Marine, 571 U.S. at 59.[8]

## CONCLUSION

For the reasons set forth above, Apple's motion to transfer venue (doc. no. 19) is granted. The court directs the clerk to transfer this action to the United States District Court for the Northern District of California. All pending motions (doc. nos. 26, 28, 29, 30, 32) are denied as moot, with leave to refile in the transferee court.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 14, 2021

cc: Counsel of Record

---

[8] Because the court finds that transfer is warranted under Section 1404(a), it does not address Apple's alternative argument that this action should be transferred in the interests of justice and to promote the convenience of the parties.