UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Coronavirus Reporter and<br>Five Unnamed Apps, on behalf of themselves<br>and all others similarly situated,<br><br>     *Plaintiffs*,<br>  v.<br>Apple Inc.,<br><br>     *Defendant*. | Civil Action No. 1:21-cv-00047-LM |

### DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

### PRELIMINARY STATEMENT

This Court correctly granted Defendant Apple Inc.'s ("Apple") motion to transfer. The mandatory forum selection clause in the Apple Developer Program License Agreement ("DPLA") controls, and it designates the Northern District of California ("Northern District") as the venue for lawsuits that relate to the DPLA, as this one "plainly" does. ECF No. 33, at 11. Public-interest factors also uniformly favor transfer under 28 U.S.C. § 1404(a). Plaintiffs[1] have failed to identify any error in the Court's analysis, much less a "manifest" error that would support reconsideration.

Instead, Plaintiffs argue that the Court erred by treating the First Amended Complaint ("FAC") as the operative complaint. Plaintiffs argue they filed the FAC with the Court's leave under Rule 15(a)(2), and, by doing so, preserved their right to file the Second Amended Complaint ("SAC") as a matter of course under Rule 15(a)(1). According to Plaintiffs, then, the SAC is the operative complaint, and the filing of the SAC alone mooted Apple's motion to transfer because that motion was based in part on the allegations in the FAC. Plaintiffs further argue that, by

---

[1] Apple uses the term "Plaintiffs" in this motion solely as a shorthand to identify "Coronavirus Reporter and the Five Unnamed Apps." The so-called "Five Unnamed Apps" are not properly before the Court as plaintiffs, for the reasons explained in Apple's motion to dismiss. *See* ECF No. 32-1, at 8–10.

{C2267942.1}                                 1

treating the FAC as the operative complaint, the Court deprived Plaintiffs an opportunity to object to transfer of the SAC.

Plaintiffs' theory does not justify reconsideration, for two reasons. First, Plaintiffs identify no controlling authority establishing that a plaintiff may amend its complaint as of right having already amended its complaint once; that point of law is unsettled in the First Circuit. Second, even if the SAC is the operative complaint, the Court's transfer analysis applies with equal, if not greater, force to the SAC's allegations, which the Court expressly considered. Ample authority also establishes that a transfer motion need not be re-filed after an amended complaint.

Plaintiffs' alternative request for a stay of the transfer order pending interlocutory appeal should also be denied. Plaintiffs cite no authority in support of their request, nor do they develop their argument for a stay, which waives the argument. But even if this Court were to consider it, Plaintiffs cannot establish a likelihood of success on the merits—a critical factor in any stay analysis—because there was no error in the Court's transfer decision.

Plaintiffs' motion for reconsideration and alternative request for a stay should be denied.

## BACKGROUND

### I.     Initial Proceedings

Coronavirus Reporter filed its original complaint on January 19, 2021, and its FAC on March 4, 2021. ECF Nos. 1, 17. The FAC alleged that, by rejecting Coronavirus Reporter's proposed iOS app for distribution on the App Store, Apple violated federal antitrust laws, breached the Apple Developer Agreement, and breached the implied covenant of good faith and fair dealing. In both its original complaint and the FAC, Coronavirus Reporter alleged that it had "previously transacted business under the name Calid." ECF No. 1 ¶ 14; ECF No. 17 ¶ 14 (p. 7).

On March 11, 2021, Apple moved to transfer this action to the Northern District. ECF No. 19. Apple supported its motion with evidence that Calid Inc. ("Calid") was the developer of

the proposed Coronavirus Reporter iOS app, submitted the app to Apple for review, and agreed to the DPLA. The DPLA contains the forum selection clause that this Court held applies here. *See* ECF No. 33 at 8–13. On April 12, 2021, Apple moved to dismiss the FAC for failure to state a claim, expressly noting that its motion to dismiss was without prejudice to Apple's earlier motion to transfer. ECF No. 26, at 2 n.1.

On April 26, 2021, rather than respond to Apple's motion to dismiss, Plaintiffs filed the SAC without Apple's consent or the Court's leave. At no point did Plaintiffs move to strike Apple's motion to transfer. The SAC was styled as a putative class action on behalf of three proposed classes. It added four new antitrust claims, Five Unnamed Apps as purported plaintiffs, even though they did not seek the Court's leave to proceed anonymously, and re-pleaded the same claims alleged in the FAC, which Apple had previously moved to dismiss. ECF No. 27. Many of the SAC's new allegations were also copied nearly verbatim from other antitrust litigations currently pending against Apple in the Northern District. *See* ECF No. 32-1, at 7, 11–13. The SAC alleges that Plaintiffs were "required to sign the DPLA" and that Apple induced Plaintiffs to sign and be bound by that agreement. SAC ¶¶ 219–20; 158 (one of three proposed classes defined as "the millions of U.S.-based iOS developers who were required to sign the DPLA . . . .").

On May 10, 2021, Apple moved to dismiss the SAC under Rule 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. Just as in its motion to dismiss the FAC, Apple expressly reserved all rights as to its motion to transfer. ECF No. 32-1, at 2 n.1. Apple argued that the Five Unnamed Apps are not proper parties to this action and should be dismissed; this action is substantially similar to pending antitrust actions against Apple in the Northern District, so should be dismissed or transferred to the Northern District under the first-to-file rule; Coronavirus Reporter lacks Article III standing to sue for alleged injuries it does not

claim to have suffered; and Coronavirus Reporter's antitrust claims should be dismissed for failure to allege essential elements of those claims, including a plausible relevant market, exclusionary conduct, and concerted action among Apple and its competitors to purportedly restrain trade.

## II.  The Transfer Decision

On May 14, 2021, this Court granted Apple's motion to transfer. *See* ECF No. 33. Although the Court treated the FAC as the operative complaint, the Court expressly noted it "consider[ed]" the SAC's "allegations in stating the factual background." *Id.* at 6 n.2. Relying on the SAC's allegations, the Court noted that Coronavirus Reporter "concedes that, before it submitted its application to Apple for distribution through the App Store, it agreed to be bound by the Apple Developer Program License Agreement (the "License Agreement")." *Id.* at 1.

The Court observed that it was unclear whether Coronavirus Reporter or Calid developed the app and submitted it to Apple. *Id.* at 6, 7 n.5. Given Apple's evidence that Calid developed the app, and the Court's further observation that the DPLA prohibits "assignment of a developer's rights and obligations under the agreement absent Apple's advance written consent," the Court concluded there is "an open question as to whether plaintiff is the real party in interest with standing to bring this action." *Id.* at 7 n.5. Even so, for purposes of resolving the transfer motion, the Court accepted as true the allegations in the SAC that Coronavirus Reporter developed and submitted the app in question. *Id.*

The Court held the DPLA's forum selection clause was enforceable and mandatory. *Id.* at 8–11. Plaintiffs do not dispute this conclusion in their motion for reconsideration. The Court further concluded that all of Coronavirus Reporter's claims fell within the scope of the broad forum selection clause because "the conduct underlying plaintiff's claims would not have occurred but for the License Agreement and the relationship it created." *Id.* at 12. That is, Coronavirus

Reporter's claims "plainly 'aris[e] out of or relat[e] to' plaintiff's relationship with Apple." *Id.* at 11. (alterations in original). Plaintiffs do not challenge this determination either.

Having concluded the clause was enforceable, mandatory, and covered all of Coronavirus Reporter's claims, the Court held that transfer was appropriate under 28 U.S.C. § 1404(a). The Court determined that Coronavirus Reporter fell "well short of meeting its burden" to show that public-interest factors overwhelmingly disfavor transfer. ECF No. 33, at 14. Most of Coronavirus Reporter's arguments addressed *private*-interest factors, which cannot be considered in the face of an enforceable forum selection clause. *Id.* And its arguments as to public-interest factors—including that App Store policies impact New Hampshire consumers—failed to address whether public interests actually disfavor transfer, much less overwhelmingly disfavor transfer, as a plaintiff must show to overcome an enforceable forum selection clause. *Id.* at 14–15.

In granting Apple's motion to transfer, the Court denied as moot all pending motions, with leave to refile in the Northern District. *Id.* at 15. On May 15, 2021, Plaintiffs filed their motion for reconsideration.[2]

## ARGUMENT

**I.     Legal Standard**

A motion to reconsider an interlocutory order "shall demonstrate that the order was based on a manifest error of fact or law." LR 7.2(d). A manifest error is "plain and undisputable,

---

[2] Just two days later, dissatisfied with the Court's ruling transferring the instant case to the Northern District, counsel for Coronavirus Reporter filed another complaint against Apple in the U.S. District Court for the District of Maine on behalf of a plaintiff, Primary Productions LLC, that shares striking similarities to "App #2," one of the Unnamed Apps purporting to proceed as a plaintiff to the SAC. *See generally Primary Productions LLC v. Apple Inc.*, 2:21-cv-00137-JDL, ECF No. 1, Compl. (May 17, 2021) ("Maine Complaint"). For example, Primary Productions is alleged to be a New Jersey LLC, while App #2 "has a parent LLC in New Jersey"; Primary Productions is allegedly an "edutainment media production company," while App #2 allegedly "created an edutainment financial technology application"; Apple allegedly rejected Primary Productions' app because it was "frivolous" and "caused risk-gambling," while Apple allegedly barred App #2 "for creating too much financial risk to users." *Compare* Maine Compl. ¶¶ 14, 39, *with* SAC ¶¶ 17, 94. The Maine Complaint also alleges the same eight claims as the SAC and copies many of the SAC's allegations verbatim. *Compare* Maine Compl. pp. 37–53, *with* SAC pp. 50–68.

obvious, or clearly wrong." *Harley-Davidson Credit Corp. v. RASair, LLC*, 2014 DNH 258, 4 (McCafferty, J.) (citation omitted). Reconsideration is "an extraordinary remedy which should be used sparingly," *Dolan v. SunGard Sec. Fin., LLC*, 2008 WL 686257, at *1 (D.N.H. Mar. 6, 2008) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)), and will not be granted based on "new arguments," arguments "not previously presented," or "arguments that were previously presented but rejected." *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 2020 DNH 051, 2 (McCafferty, J.) (citing *Swirka v. Liberty Mut. Ins. Co.*, 2018 DNH 250, 2). A motion for reconsideration also "does not provide a vehicle for a party to undo its own procedural failures." *Harley-Davidson*, 2014 DNH 258, 4–5 (quoting *Fabrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 31 (1st Cir. 2012)).

## II.   Plaintiffs Have Not Carried Their Burden to Warrant the "Extraordinary Remedy" of Reconsideration

Plaintiffs do not identify any error, much less "manifest" error, in the Court's transfer analysis under 28 U.S.C. § 1404(a). They instead challenge the Court's decision to treat the FAC as the operative complaint, arguing (without citing any relevant authority) that the SAC somehow mooted Apple's transfer motion and that the Court's transfer decision "denied" Plaintiffs an opportunity to object to the transfer motion on the SAC's "facts and claims." Mot. at 3.

Plaintiffs cite no controlling authority to support their argument that the SAC is the operative complaint. And even if it is, the Court's transfer analysis applies with as much force, if not more, to the SAC, which precludes a finding of manifest error.

### A.   Plaintiffs do not identify a "manifest error of fact or law."

#### 1.   Plaintiffs cite no controlling authority to establish a "manifest" error of law.

Plaintiffs fail to show that the Court's decision to treat the FAC as the operative complaint constitutes manifest error. The Court's decision is consistent with others holding that a plaintiff

may not amend its complaint as of right having done so once, a doctrinal reality that precludes a finding of "undisputable" error.  In *Elliott v. Foufas*, for example, the Fifth Circuit held that even though the district court had ordered the plaintiff to amend her original complaint such that the first "amendment was not voluntary," "[a]ny further amendment . . . could only be by leave of the court."  867 F.2d 877, 882–83 (5th Cir. 1989); *see also Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203–04 (7th Cir. 1985) (similar); *Yoo v. BMW Mfg. Co., LLC*, 2019 WL 1416882, at *3 n.4 (D.S.C. Mar. 29, 2019) (because "Plaintiff had already filed an amended complaint," it could not file its second amended complaint as of right under Rule 15(a)(1) (citing *Glaros. v. Perse*, 628 F.2d 679, 686 (1st Cir. 1980))).

Plaintiffs' only support for their theory is a lone out-of-circuit decision, which happens also to be the only decision cited *at all* in Plaintiffs' motion.  Mot. at 3 (citing *Ramirez v. County of San Bernardino*, 806 F.3d 1002 (9th Cir. 2015)).  But the Ninth Circuit's decision is not binding on this Court, and Plaintiffs' failure to cite any binding authority further establishes the absence of a "manifest error" that is "plain and undisputable."  *Harley-Davidson*, 2014 DNH 258, 4–5; *see also United States v. Flores-Mora*, 2019 DNH 101, 3, 5 (no "manifest error of law" where contrary authority included "a concurring opinion to an unpublished decision from the Eleventh Circuit" and decisions from "several other district courts"); *McLaughlin v. Unum Life Ins. Co. of Am.*, 212 F.R.D. 40, 42 n.2 (D. Me. 2002) ("This Court . . . is not bound by the holding of another circuit on a question of federal law.").

In any event, the Court here *did* rely on the SAC, a fact Plaintiffs ignore in their motion.  The Court explained that the SAC contained "plaintiff's most fully developed account of the facts underlying its claims," and relied on the SAC for Coronavirus Reporter's concession that it was

bound by the DPLA. ECF No. 33, at 1, 6 & n.2. There was no manifest error in the Court's decision to treat the FAC as the operative complaint, while also considering the SAC's allegations.

      **2.    Even if the SAC is the operative complaint, the transfer decision is correct and does not warrant reconsideration.**

Plaintiffs assert in conclusory fashion that any motion to transfer based on the SAC's allegations would have been "futile." Mot. at 3. But Plaintiffs' argument rests on the faulty premise that the SAC's allegations somehow alter the transfer analysis. Even if the SAC is the operative complaint, there was no error in the Court's transfer decision. To the contrary: the SAC strengthens the case for transfer.

      *(a)    The SAC confirms Plaintiffs are bound by the DPLA's forum selection clause.*

Coronavirus Reporter primarily argues it is not bound by the DPLA because the SAC removed the allegation that "Plaintiff previously transacted business under the name Calid." ECF No. 17 ¶ 14 (p. 7). In Coronavirus Reporter's view, the SAC's omission of that allegation shows that "Coronavirus Reporter had little relation to [that] company mentioned in the FAC" and, therefore, that "Coronavirus Reporter never signed a forum selection clause." Mot. at 3–4.[3]

Coronavirus Reporter's gamesmanship does not alter the transfer analysis. The SAC *itself* explicitly alleges that Coronavirus Reporter is bound by the DPLA, which contains the mandatory forum selection clause that controls here. ECF No. 33, at 1 (citing SAC ¶¶ 219–20). Specifically, the SAC alleges that the "Apple Developer Program License Agreement and the terms of the App Store unreasonably restrain competition" and that "Apple has induced and coerced developers, *like*

---

[3] Plaintiffs seem to assume that the Court may look only within the four corners of the operative complaint when deciding a motion to transfer venue. That is incorrect. *See Price v. PBG Hourly Pension Plan*, 921 F. Supp. 2d 764, 772 (E.D. Mich. 2013) ("[O]n a motion to transfer pursuant to § 1404(a) a court is not limited to the pleadings. Rather, 'a court may consider undisputed facts outside the pleadings.'" (quoting *Huang v. Napolitano*, 721 F. Supp. 2d 46, 47 (D.D.C. 2010)); listing cases); *cf. Stars for Art Prod. FZ, LLC v. Dandana, LLC*, 806 F. Supp. 2d 437, 447 (D. Mass. 2011) ("A district court may examine facts outside the complaint to determine whether venue is proper." (citation omitted)).

*the Plaintiffs . . . ,* to sign and be bound by" the DPLA.  SAC ¶¶ 219–20 (emphasis added); *see also id.* ¶ 158.  Relying on these allegations from the SAC—which are more explicit than the FAC, which does not mention the DPLA at all—the Court noted that Coronavirus Reporter "concedes that, before it submitted its application to Apple for distribution through the App Store, it agreed to be bound by the Apple Developer Program License Agreement."  ECF No. 33, at 1.

That Coronavirus Reporter is bound by the DPLA is also clear from Apple's submission in support of its motion to transfer.  The Declaration of Mark Rollins in Support of Apple's Motion to Transfer Venue establishes that Calid developed the Coronavirus Reporter app and that Calid agreed to the DPLA in order to submit the Coronavirus Reporter app for review and possible distribution on the App Store.  ECF No. 19-2, ¶¶ 5–8.  Coronavirus Reporter does not dispute these facts, nor can it.  As both the original complaint and FAC acknowledged, Coronavirus Reporter previously transacted business as Calid.  ECF No. 1, ¶ 14; ECF No. 17, ¶ 14 (p. 7).  Although Coronavirus Reporter now tries to walk back this fact, insisting that it never "intend[ed]" to be viewed as the "legal equivalent" of Calid, it all but concedes that it worked with Calid in submitting the app at issue here.  *See* Mot. at 4 (Coronavirus Reporter "may have transacted with said company [Calid] on one occasion, because of the urgency COVID presented in February 2020 to have prompt review by Apple").

It is clear that Coronavirus Reporter and Calid are—at the very least—sufficiently "closely related" to make the DPLA binding on Coronavirus Reporter, as the SAC concedes and as the Court necessarily found.  *See* ECF No. 19-1, at 5–6 (describing "closely related" doctrine); ECF No. 33, at 6 ("Plaintiff concedes that it executed both the License Agreement and Developer Agreement but does not specify whether it did so under its own name, under the name of some other entity, or through operation of law or by assignment from another entity." (citing SAC ¶¶

12, 14, 87, 219–20, 232, 234, 252, 261)). And if Coronavirus Reporter truly has no connection to Calid, which indisputably submitted the app at issue here, then Coronavirus Reporter is not "the real party in interest with standing to bring" the various antitrust and contract claims related to an app that Calid developed. ECF No. 33, at 7 n.5. Coronavirus Reporter cannot have it both ways.[4]

### (b)  *The SAC confirms Plaintiffs' claims relate to the DPLA.*

As the Court explained in its transfer order, the forum selection clause's "scope extends not merely to claims relating to the License Agreement but also to claims relating to the 'relationship' between plaintiff [Coronavirus Reporter] and Apple." ECF No. 33, at 12. Nothing in the SAC changes the fact that agreeing to "the License Agreement was a prerequisite to Apple's consideration of plaintiff's app for distribution through the App Store," meaning that the conduct "underlying plaintiff's claims would not have occurred but for the License Agreement and the relationship it created." *Id.* That reasoning holds just as true for the Five Unnamed Apps, which the SAC expressly alleges agreed to the DPLA and were denied distribution through the App Store. *See* SAC ¶¶ 91, 219–20. Plaintiffs make no attempt to explain how any of their claims fall outside of the "relationship" contemplated by the DPLA. As a result, Plaintiffs have failed to demonstrate any "manifest error."

Courts in this circuit have enforced broadly worded forum selection clauses, like the one here, as to new claims and allegations asserted in an amended complaint filed after a motion to transfer venue. *Capriole v. Uber Technologies, Inc.* is instructive. 2020 WL 1536648, at *1 (D. Mass. Mar. 31, 2020). In *Capriole*, while the defendant's motion to transfer was pending, the

---

[4] Even if the Five Unnamed Apps were proper parties to this suit—and they are not—the SAC's concession that all Plaintiffs are bound by the DPLA, *see* SAC ¶¶ 158, 219–20, establishes that those apps (and any real parties in interest behind them) are subject to the DPLA's forum selection clause. The SAC also identifies no public interests that "overwhelmingly disfavor" transfer with respect to the Five Unnamed App Plaintiffs. *Atl. Marine Constr. Co.* v. *United States Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013).

plaintiff amended his putative class action complaint to add a new claim under Massachusetts law. *Id.* In its earlier motion to transfer venue, the defendant argued that the plaintiff had agreed to a forum selection clause, warranting transfer to the Northern District of California. *Id.* at *4. The court held that the forum selection clause was mandatory and enforceable, and enforced the clause as to all of the claims alleged in the amended complaint, without requiring that the defendant file a new motion to transfer venue in response to the amended complaint. *Id.* at *4–6.

Similarly, in *Hotel Airport, Inc. v. Best Western International, Inc.*, the plaintiff moved to amend its complaint while the defendant's motion to transfer venue was pending. 2019 WL 978544, at *1 (D.P.R. Feb. 26, 2019). The proposed amended complaint removed a claim "in an attempt to moot [the defendant's] motion to transfer." *Id.* Without requiring the defendant to re-file its motion to transfer, the court held that the "mandatory forum selection clauses" "cover[ed] both complaints' claims" because the plaintiff's claims "arise from or relate to" the plaintiff's "prior dealings" with the defendant. *Id.* (alterations omitted). The court further concluded that the plaintiff failed to "make a 'strong showing' against court enforcement" of the clauses. *Id.* (quoting *Autoridad de Energia Electrica de P.R. v. Vitol S.A.*, 859 F.3d 140, 145 (1st Cir. 2017)).

Here, the DPLA's forum selection clause, like the one at issue in *Hotel Airport*, requires any litigation "arising out of or relating to" the DPLA or a developer's "relationship with Apple" to take place in the Northern District. *Compare* ECF No. 33, at 4 (quoting ECF No. 19-4, ¶ 14.10), *with Hotel Airport*, 2019 WL 978544, at *1. Plaintiffs fail to explain how any of their claims and allegations in the SAC fall outside of their "relationship with Apple," and therefore fail to show how the SAC changes the transfer analysis. *Cf. Hotel Airport*, 2019 WL 978544, at *1 (transferring case upon finding mandatory forum selection clauses covered "both complaints' claims").

### *(c)     Transfer was proper regardless of the mandatory forum selection clause.*

Apple's motion to transfer also argued that transfer was proper under a straightforward Section 1404(a) analysis because the action could have been brought in the Northern District and because transfer would serve the interest of justice and the convenience of parties and witnesses. ECF No. 19-1, at 12–15.  Although the Court did not address this argument in its Order, transfer is proper for these reasons as well.  *See* ECF No. 33, at 15 n.8.

### *(d)     The SAC did not "moot" Apple's motion to transfer.*

Even if the SAC were the operative complaint, an intervening amended complaint does not moot a pending motion to transfer venue, especially where, as here, the amended complaint only strengthens the case for transfer.[5]  While "motions to dismiss are generally mooted by the filing of an amended complaint," motions to transfer venue are "not mooted," and courts have "discretion [to] interpret the [m]otion to [t]ransfer as applicable to the . . . [a]mended [c]omplaint where such a motion remains applicable."[6]  *WowWee Grp. Ltd. v. Wallace*, 2012 WL 13013022, at *1 (C.D. Cal. June 27, 2012).  This is because "[f]orcing Defendants to file the same motion a second time would be a waste of the Court's and the parties' resources."  *Id.* (holding motion to transfer was not mooted by filing of amended complaint that included new plaintiffs); *see also Searsboro Tel.*

---

[5] Although Plaintiffs now contend the SAC mooted Apple's transfer motion, they never moved to strike the transfer motion.  *See* LR 7.2(b).  Nor did Plaintiffs explain to the Court how they believe the SAC somehow affected Apple's transfer motion.  Plaintiffs cannot cure these problems in a motion for reconsideration, which "does not provide a vehicle for a party to undo its own procedural failures."  *Johnson v. Cap. Offset Co.*, 2013 WL 12425708, at *1 (D.N.H. Aug. 21, 2013) (quoting *Fabrica de Muebles*, 682 F.3d at 31).  Similarly, although Plaintiffs argue that the Court "blocked Five Unnamed App Plaintiffs . . . from joinder to this . . . matter," when it treated the FAC as the operative complaint, Mot. at 3, Plaintiffs fail to explain how the Five Unnamed Apps' own failure to (i) join the action under Fed. R. Civ. P. 20 or (ii) object to Apple's motion to transfer in any way "denied" their rights.  *See Johnson*, 2013 WL 12425708, at *1.

[6] The transfer statute permits the Court to transfer the case under Section 1404(a) even in the absence of a motion to transfer.  28 U.S.C. § 1404(a) ("a district court may transfer any civil action to any other district or division where it might have been brought"); *U.S. ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434, 436 (D. Mass. 2007) ("It is well settled that a court may transfer a case sua sponte pursuant to 28 U.S.C. §§ 1404(a) . . . ." (quoting *Desmond v. Nynex Corp.*, 1994 WL 577479, at *3 (1st Cir. Oct. 20, 1994))).

*Co., Inc. v. Qwest Commc'ns Co., LLC*, 2009 WL 10703429, at *1 (D.D.C. Aug. 5, 2009) ("Plaintiffs assert that the Court erred because the First Amended Complaint rendered the motion to transfer moot, but they make no contention that the Court erred in its analysis as applied to the First Amended Complaint."); *Textron Fin. Corp. v. KrystalKoach, Inc.*, 2010 WL 2132662, at *1 n.1 (E.D. Mo. May 26, 2010) (concluding amended complaint did not "moot" defendant's motion to transfer because the amended complaint did not differ from the original complaint on issues relevant to transfer); *Juilfs v. Assurance Co. of Am.*, 2009 WL 10669662, at *1–3 (N.D. Ga. July 31, 2009) (dismissing motions to dismiss as moot in light of amended complaint, but granting motion to transfer despite intervening amended complaint); *Hammond v. Wal-Mart Stores, Inc.*, 2011 WL 1668209, at *1 (E.D. Cal. May 2, 2011) (same); *cf.* LR 15.1(c) (providing that "a motion to dismiss for failure to state a claim" "shall be automatically denied without prejudice" upon the filing of an amended complaint, but not mentioning other motions).

Finally, the SAC only strengthens the transfer analysis with respect to Coronavirus Reporter and the purported Five Unnamed Apps, *supra* § II.A.2(a)-(b). The SAC did not moot Apple's motion to transfer, and requiring Apple to file "the same motion a second time" would have been "a waste of the Court's and the parties' resources." *WowWee Grp.*, 2012 WL 13013022, at *1.

### III. A Stay Is Not Warranted

Should the Court deny Plaintiffs' motion for reconsideration, Plaintiffs alternatively ask the Court to "grant counsel time to file an interlocutory appeal before transferring away from this district." Mot. at 3. Plaintiffs seem to seek a stay of this Court's transfer order so they can file an interlocutory appeal. But they make no attempt to address any of the factors relevant to whether a stay is justified. Plaintiffs were required to analyze "(1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed absent

injunctive relief; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies." *Joubert-Vazquez v. Alvarez-Rubio*, 841 F. Supp. 2d 570, 571 (D.P.R. 2012) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776–77 (1987)). Because they failed to engage in any analysis to support a request for a stay, Plaintiffs have "waived" this argument. *Brown v. Wells Fargo Home Mortgage*, 2017 DNH 145, 18 n.31 (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)); *see also Jarvis v. Berryhill*, 2018 DNH 014, 4 n.7 (same).

Even if this Court were to consider Plaintiffs' request, it does not get out of the gate. Plaintiffs cannot show a "strong" likelihood of success of obtaining certification for an interlocutory appeal. Interlocutory appeals under § 1292(b) "require an order (1) 'involving a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and (3) for which 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) (quoting 28 U.S.C. § 1292(b)) (alterations omitted). The First Circuit has "repeatedly emphasized" that interlocutory certification "should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and *pivotal* questions of law not settled by controlling authority." *Id.* (emphasis added) (quoting *Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986)). It is equally well settled in the First Circuit that an "order of transfer is obviously not one of those exceptional classes of interlocutory orders immediately appealable to the courts of appeals under 28 U.S.C. § 1292." *In re Josephson*, 218 F.2d 174, 176–77 (1st Cir. 1954).

Here, Plaintiffs have failed to identify any error in the Court's transfer analysis. *See supra* Argument § II.A.2. Nor can they show that the Court's decision raises a "pivotal" question of law: even accepting Plaintiffs' theory that the SAC is the operative complaint, the SAC's allegations

simply confirm that transfer is required here.  Plaintiffs have thus failed to show a strong likelihood of success of obtaining interlocutory review of this Court's transfer decision.  Accordingly, a stay of this Court's transfer order is not warranted.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court deny Plaintiffs' motion for reconsideration and alternative request for a stay.

Respectfully submitted, this 1st day of June, 2021,

APPLE INC.
By and through its attorneys,

By: __/s/ Kevin M. O'Shea_____

| SULLOWAY & HOLLIS, PLLC | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
|---|---|
| Kevin M. O'Shea, Esquire | Jessica E. Phillips, Esquire |
| New Hampshire Bar No. 15812 | Admitted Pro Hac Vice |
| Allyson L. Moore, Esquire | Martha L. Goodman, Esquire |
| New Hampshire Bar No. 272208 | Admitted Pro Hac Vice |
| 9 Capitol Street | 2001 K Street, NW |
| Concord, New Hampshire 03301 | Washington, DC 20006-1047 |
| (603) 223-2800 | (202) 223-7300 |
| koshea@sulloway.com | jphillips@paulweiss.com |
| amoore@sulloway.com | mgoodman@paulweiss.com |

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was filed through the ECF/CM system and will be sent to all parties of record through ECF/CM.

<u>Counsel for Coronavirus Reporter</u>
Keith Mathews, Esquire
Associated Attorneys of New England
P.O. Box 278
Manchester, NH  03105
(603) 622-8100
keith@aaone.law

Date:   June 1, 2021        By:    /s/ Kevin M. O'Shea_____